UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JOHN S. WIECZOREK, | ) |
|     Plaintiff. | ) 12-cv-4904 |
| v. | ) Judge Sharon Johnson Coleman |
| OFFICER SLIVIA, | ) |
|     Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

John Wieczorek sued Officer Sliva,[1] a Cook County corrections officer, under 42 U.S.C. § 1983, alleging that, while Wieczorek was a detainee at the county's corrections department, Sliva violated Wieczorek's civil rights by grabbing his throat and banging his head against a glass wall without provocation. Sliva moves for summary judgment on the ground that Wieczorek failed to exhaust administrative remedies, as required by federal law. Because there is an issue of fact as to whether Wieczorek ever submitted a grievance form, and thus attempted to exhaust his administrative remedies, the court denies Sliva's motion and orders a *Pavey* hearing.

**BACKGROUND**

On March 2, 2012, Cook County admitted Wieczorek to the Department of Corrections. Wieczorek was examined at Cermak hospital facilities on March 28th for complaints about wrist pain. Wieczorek stated in his deposition that after his exam, he was handcuffed in a hallway when Sliva grabbed his throat from behind. Dkt. # 51-6 at 2–3, 6–7. Wieczorek related that Sliva said he was going to kill Wieczorek and "kick [his] ass." *Id.* at 4. According to Wieczorek, Sliva then

---

[1] Wieczorek names "Officer Slivia" as the defendant, but Wieczorek now appears to agree that the defendant's name is spelled Sliva.

1

banged Wieczorek's head against a glass wall. *Id.* The parties agree that a county investigator was unable to find any incident reports involving a confrontation between Wieczorek and Sliva on March 28, 2012.

The principal issue at this stage in the case is whether Wieczorek ever submitted a grievance form to department officials. The department's Rules and Regulations for Detainees provide:

> Upon completion of the **Inmate Grievance Form**, sworn personnel will collect inmate grievances, Monday through Friday, in sealed grievance envelopes. These sealed enveloped will be delivered to the [correctional rehabilitation worker (CRW)] in the respective division. . . . Please be reminded and assured that when the grievance is received in a sealed envelope during the collection process, the procedure is confidential, and the only authorized person to receive, process and forward the grievance is the CRW assigned to the division where the inmate is housed. Dkt. # 51-8 at 10.

Wieczorek acknowledged in deposition that he received a copy of the Rules when he entered the corrections department and that he is aware of the detainee grievance process. Dkt. # 51-5 at 51.

The day after Wieczorek's alleged incident with Sliva, Wieczorek met with Dr. Joseph Thomas, a mental-health specialist, about the incident. Thomas noted in his report that Wieczorek expressed his intent to file a grievance against Sliva. Dkt. # 54-1 at 4. Wieczorek stated in his deposition that, one day later, he did complete a grievance and submitted it to Sergeant Ardolino. Dkt. # 51-6 at 23–26. (Wieczorek indicated in response to an interrorgatory, however, that he gave the grievance to a Sergeant Villanova on the date of the incident. *Id.* at 46–47; Dkt. # 51-7 at 76.) Wieczorek stated he was aware that he was supposed to submit the grievance to a department social worker but that a social worker told him to submit the grievance to "the sergeant." Dkt. # 51-5 at 33–34; Dkt. # 51-6 at 27. He also stated that he was under the impression that submitting the grievance directly to the sergeant would allow for speedier processing. Dkt. # 51-6 at 27. Ardolino and Villanova both deny ever receiving a grievance from Wieczorek in 2012. Dkt. # 51-9 at ¶¶ 7–8; Dkt. # 51–11 at ¶ 5. Wieczorek explained that when he did not receive a response to his initial grievance, he wrote a second grievance and submitted it in early April 2012 to the on-duty sergeant.

2

Dkt. # 51-6 at 27–29. Wieczorek maintains that he also never received a response to the second grievance and that he subsequently "gave up on it." *Id.* at 29.

According to county officials, multiple reviews of county records did not indicate that Wieczorek filed any grievances in late March or early April. Dkt. # 51-8 at ¶ 10; Dkt. # 51-10 at ¶ 10. The parties agree that Wieczorek properly filed other grievances while he was a detainee. A county official testified that an independent investigation into Sliva's conduct by the office of professional review found no evidence supporting Wieczorek's allegations. Sliva has brought this motion for summary judgment based on Wieczorek's failure to exhaust his administrative remedies.

**LEGAL STANDARD**

The court must grant summary judgment if the moving party "shows that there is no genuine dispute as to any material fact" and if that party "is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The court, when determining whether summary judgment is proper, views the record in the light most favorable to the opposing party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 254–55 (1986); *accord Tolan v. Cotton*, 134 S. Ct. 1861, 1866 (2014).

**DISCUSSION**

Federal law does not permit Wieczorek to bring an action "with respect to prison conditions" before he exhausts "administrative remedies." 42 U.S.C. § 1997e(a). This requirement obligates Wieczorek to use a prison's "internal administrative grievance system" before "filing a claim." *Massey v. Helman*, 196 F.3d 727, 733 (7th Cir. 1999). Exhaustion also requires prisoners to "follow the rules governing filing and prosecution of a claim." *Pozo v. McCaughtry*, 286 F.3d 1002,

3

1025 (7th Cir. 2002). These rules include the "procedures" mandated by "the prison grievance process itself." *Jones v. Bock*, 549 U.S. 199, 218 (2007).

Here, the parties dispute whether Wieczorek, as a matter of historical fact, ever properly filed a grievance about the alleged incident with Sliva. Wieczorek says he did. Sliva says he did not.

The court begins with the actual language of the department's grievance guidelines: "Upon completion of the **_Inmate Grievance Form_**, sworn personnel will collect inmate grievances, Monday through Friday, in sealed grievance envelopes. These sealed envelopes will be delivered to the CRW in the respective division." A few paragraphs later, the guidelines state:

> Please be reminded and assured that when the grievance is received in a sealed envelope during the collection process, the procedure is confidential, and the only authorized person to receive, process and forward the grievance is the [correctional rehabilitation worker (CRW)] assigned to the division where the inmate is housed.

This grievance-guidelines language appears to contemplate a multi-step process. First, a detainee must complete a grievance form. Second, "sworn personnel" will collect the forms. Third, the forms "will be delivered to the CRW." Because the guidelines are written in the passive voice, it is unclear *who* will deliver the forms to the CRW. But the fairest reading, in context, is that the "sworn personnel" will deliver the forms to the CRW.

Sliva suggests, for two reasons, that prisoners must submit their grievance forms only to CRWs. First, Sliva highlights the language that reads: "the only authorized person to receive . . . the grievance is the CRW." This language comes from a paragraph providing an assurance to prisoners about the confidential nature of the grievance process. The problem is that the language is ambiguous about *from whom* is the CRW "the only authorized person to receive" a grievance: from prisoners or from "sworn personnel"? A reasonable reading, and perhaps the *most reasonable* reading, of the grievance guidelines is that the CRW is the "only authorized person to receive" a grievance from the aforementioned "sworn personnel." If the guidelines had the meaning that Sliva suggests,

4

one supposes that they would simply say: "Upon completion of the Inmate Grievance Form, a CRW will collect inmate grievances."

Second, Sliva notes that the department does not authorize officers to accept grievances directly from inmates. Sliva cites to the statement of a department supervisor, dkt. # 51-8 ¶ at 7, who, in turn, points to a sheriff's order that forbids officers from collecting grievances, *id.* at 20. The supervisor states that this sheriff's order "was available" to all inmates in 2012, *id.* at ¶ 5, but there is no evidence in the record about how it would have been available or whether Wieczorek had any reason to be aware of it. Wieczorek's signed jail-history card indicates that he received a copy of the Rules and Regulations, not any sheriff's orders. Dkt. # 51-7 at 30. The Rules and Regulations, which Wieczorek acknowledges was provided to him, contains a section purporting to set forth all the grievance guidelines; there is no reference to the guidelines incorporating any procedures in a sheriff's order.

It is true that ignorance of the grievance process is generally not an excuse for failure to file a grievance properly. *See Twitter v. McCoskey*, 226 F. App'x 594, 595–96 (7th Cir. 2007). But prisoners cannot be expected to comply with policies that they are not informed of, *cf. id.*, and Sliva points to no evidence in the record that the sheriff's order was given to Wieczorek or that Wieczorek had a reason to be aware that it existed. Further, a prisoner sufficiently exhausts administrative remedies when he submits a grievance and prion officials simply fail to respond. *Lews v. Washington*, 300 F.3d 829, 833 (7th Cir. 2002).

This brings the court to Wieczorek's factual contentions. Wieczorek maintains that he first gave a grievance form either to Sergeant Ardolino or Sergeant Villanova. And he maintains that he gave a second grievance to another sergeant. Because the evidence in the record indicates that Sergeant Ardolino retired from the department in 2010, dkt. # 5-11 at ¶ 4, two years prior to the alleged incident with Sliva, the court declines to infer from the record that Wieczorek gave a

grievance form to Ardolino. *See Singer v. Raemisch*, 593 F.3d 529, 533 (7th Cir. 2010) (courts must draw only reasonable inferences in favor of non-moving party). But record evidence also exists that Wieczorek submitted grievance forms to Villanova or another sergeant. Although Villanova denies receiving the form, on a summary-judgment motion, the court must infer that Wieczorek in fact submitted the forms. Sliva presents considerable circumstantial evidence that Wieczorek did not submit the forms, but summary judgment is not the proper point in the litigation for the court to weigh the evidence or assess credibility.

In this circumstance, because exhaustion presents a contested factual issue, the court must conduct a hearing on exhaustion and may permit additional discovery as needed. *Pavey v. Conley* (*Pavey II*), 544 F.3d 739, 742 (7th Cir. 2008) (Posner, J.). A prisoner does not have a Seventh Amendment jury-trial right to factual issues relating to exhaustion. *Id.* at 741. At a *Pavey* hearing, the court, not a jury, must act as the finder of fact. *Id.* If Sliva demonstrates by a preponderance of the evidence that Wieczorek did not submit the form, Sliva may yet prevail on the affirmative defense of exhaustion, and the litigation will end.

For now, though, the court must deny Sliva's motion [49] for summary judgment. *See Schaefer v. Bezy*, 336 F. App'x 558, 560 (7th Cir. 2009) (vacating district court's grant of summary judgment when factual issue existed about exhaustion and requiring district court to hold a *Pavey* hearing). The court sets a status for January 9, 2015, at 9:00 a.m., at which time the parties should be prepared to schedule a *Pavey* hearing. The April 20, 2015, trial date stands as of now.

DATED: January 5, 2015      SHARON JOHNSON COLEMAN
United States District Judge

6